## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| **DAVID B. PORTER,** | **CIVIL ACTION NO. 5:19-455-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **TYLER F. SERGENT and BEREA COLLEGE,** | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on Tyler F. Sergent's motion to dismiss (DE 5) and Berea College's motion to partially dismiss (DE 7). For the reasons stated below, Sergent's motion to dismiss is **DENIED**, and Berea College's motion to partially dismiss is **GRANTED**.

### I.      BACKGROUND

This case is brought by Dr. David Porter, a former psychology professor at Berea College. Porter originally filed two suits in Madison Circuit Court—one against Berea College ("Berea") and one against Dr. Tyler F. Sergent, a current professor at Berea. The lawsuits were later consolidated and removed to federal court.

Porter's Second Amended Complaint, which is titled "First Amended Complaint," states the following facts and allegations. (DE 1-2 at 156-213.) Porter contends that Berea supports "extreme political correctness" and has a pattern and practice of discriminating against old, white, male faculty who run afoul of campus activists or grievants. Porter claims that Berea's alleged patterns and practices are supported by past incidents involving old, white, male faculty. One of the incidents he describes forms the foundation of this lawsuit.

Porter, who is a 70-year old white male, was previously employed as a psychology professor at Berea College.  While working in that capacity, Porter served as a faculty advisor in a civil rights grievance filed by three psychology professors—Dr. Wendy R. Williams, Dr. Amanda Wyrick, and Dr. Sarah Jones—against Dr. Wayne Messer, a white, male psychology professor. The three female professors asserted that Messer discriminated in hiring and promoting, retaliated for discriminatory reasons, and created a hostile workplace environment based on race, gender, or sexual orientation.  Berea ultimately dismissed the charges against Messer for retaliation and discrimination in hiring and promotion.  However, Berea found that Messer had created a hostile workplace environment based on sex and sexual orientation.  Berea cited to three incidents over a two-year period involving Messer that created such environment.

Porter served as Messer's advisor throughout the grievance hearing and appeals.  Porter argued that Messer's actions were not severe or pervasive enough to create a hostile workplace environment on the basis of sex or to warrant punishment against him.  Following the proceedings, Porter expressed his "disappointment with the unfairness of the College's disciplinary process" and attempted to discuss with Berea its "unfair lack of administrative due process and its misapplications of workplace policies and procedures in [Messer's] case."

Thereafter, Berea employed W. Scott Lewis, an expert in collegiate workplace administration, to advise it about its policies and procedures regarding workplace hostility. Lewis prepared a report for Berea.  Porter claims that the report "supported" his prior criticisms. Porter alleges that

> [a]s part of its pattern of lack of transparency, and of extreme 'political correctness,' and in another failure to defend the protected academic freedom of its faculty, the College refused to release Dr. Lewis' report, embargoed it, kept it confidential, and took no responsible actions to implement its recommendations or to address Dr. Porter's prior criticisms of the College.
>
> (DE 1-2 at 164.)

2

The following year, Porter was teaching PSY 210, Industrial / Organizational Psychology, when he decided to engage his class in a survey (the "Survey") to assess "attitudes about academic freedom, freedom of speech, and hostile work environments under civil rights law." Porter had regularly used surveys in this course in the past to obtain "archival and survey data to assess college policies, practices, and programs and to identify areas where there were opportunities for improvement." The Survey posed twenty scenarios, and the respondents were asked to read the scenario, decide if it reflected a hostile work environment, and decide whether academic freedom should protect the action taken. Porter drew half of the survey's scenarios from the issues, arguments, and events he observed while serving as faculty adviser in Messer's proceedings, but he skewed the true identities of the individuals involved in those proceedings.

Porter asserts that before disseminating the Survey, he shared drafts of it with "many other faculty members and received feedback from six of them." He states that none of these individuals expressed breach of confidentiality or ethical concerns, but two of them did express some concern about the controversy the Survey might elicit. He also provided a copy of the Survey to Dean Chad Berry.

Despite the underlying concerns expressed, Porter launched the survey on February 19, 2018 and made it accessible to the entire student body and faculty. The same day, Dean Berry asked Porter to meet and discuss the survey, and Porter promptly agreed. Additionally, Williams—one of the female professors who filed the civil rights grievance against Messer and one of the subjects of the survey—made a Facebook post expressing her extreme displeasure with Porter's actions. Porter states that the post "incorrectly claim[ed] that all of the fact patterns in the Survey's scenarios were expressly about her and the other grievants in Dr. Messer's proceedings, that the Survey improperly made allegations of cognitive impairment against her, and that the Survey intended to punish and silence them." Williams post also

"revealed the identities of persons she believed were involved to the entire campus community" and encouraged individuals to help address the situation.

The following day, Dean Berry publicly requested that Porter remove the survey and apologize to the campus community. Thereafter, Porter states that he received a phone call from Dean Berry who told him that he would forward a list of problematic survey scenarios so that the survey could be amended. But Dean Berry never forwarded any list. Porter asserts that he provided Dean Berry and President Roelofs with a draft of an apology "[w]ithin hours[,]" but President Roelofs rejected the draft because it blamed others for Porter's actions.

Two days later, Dean Berry informed Porter that charges of incompetence would be brought against him. Porter asked to discuss the matter, but "Dean Berry stated that the time for discussion had ended two days earlier when [Porter] had not immediately withdrawn the Survey and apologized to the campus." The charges against Porter were presented to the Faculty Status Committee ("FSC"), which agreed by majority that the charges against Porter were supported. Thereafter, Porter was suspended and prohibited from communicating with students.

The following month, Porter "authored and sent an e-mail to each of the grievants in which he offered his sincere apology for any hurt that Dr. Porter may have unintentionally caused or that they may have perceived or suffered as a result of Dr. Porter's preparing and disseminating the Survey." Jones—one of the grievants—accepted his apology.

In April 2018, despite his suspension, the Student Government Association ("SGA") voted to award Porter with the Student Service Award. Sergent—who was one of the faculty advisors of SGA and husband to Williams—used his college email address to send a series of emails to the SGA board members. Porter alleges that "in a retaliatory attempt to discredit Dr. Porter in front of the students and to injure Dr. Porter's academic career at the College," Sergent made the following false statements in his initial email to SGA (the "SGA Email"): (1) he falsely accused Porter of racist, sexist, and homophobic comments and conduct as a professor at the

4

school; (2) he falsely accused Porter of improperly disclosing and mischaracterizing Williams' personal medical information in an attempt to defame her in order to disparage and discredit her personally and professionally; (3) he falsely accused Porter of committing academic fraud and gross violations of professional ethics in preparing and disseminating the Survey; (4) he falsely stated that Porter was an incompetent psychology professor who had improperly and unprofessionally manipulated his students for his own purposes; (5) he falsely stated that Porter violated the College's Institutional Review Board's ("IRB") academic research requirements by refusing to submit the Survey to IRB for review prior to its dissemination; (6) he falsely accused Porter of committing academic fraud and gross violations of professional ethics by willfully causing mental and emotional harm to his students and colleagues in an effort to divide the campus community for his own political reasons, without apology; and (7) he falsely accused Porter of being an unethical, unrepentant, academically dishonest person who is in the process of rightly being fired from Berea. Porter further contends that Sergent implicitly and expressly threatened one of the SGA members who responded to Sergent's initial email.

Following the email exchange, Porter asserts that Berea "interpret[ed] the SGA award requirements, based on no rule or precedent, to prohibit giving the SGA award to a faculty member on suspension for an alleged workplace-related offense." Thereafter, Porter appeared for a hearing before the Faculty Appeals Committee ("FAC"). Dean Berry served as both a witness and prosecutor at the hearing, despite Porter's objections. Porter contends that the FAC improperly adopted a "preponderance of the evidence" standard and refused to allow him to present his defense over the course of two days. Porter then describes incidents during the proceedings, which he asserts show "blatant bias contrary to the Faculty Manual and administrative due process involved."

The FAC ultimately issued a report stating, among other things, that Porter should be terminated because he cannot be trusted to handle confidential information and his personal

conduct has hindered his professional responsibilities to the extent that he should be dismissed. President Roelofs affirmed the FAC Report's recommendation and ordered Porter's termination. Porter appealed the decision to the Berea College Board of Trustees Executive Committee, which ultimately affirmed President Roelofs' decision.

Based on the foregoing events, Porter filed suit against Berea and Sergent. Porter asserts the following claims against Berea: (1) breach of contract for suspension from employment in violation of the required due process and Porter's academic freedom (Count I); (2) breach of contract for termination of Porter's employment for incompetence after the college's denial of the required administrative due process (Count II); (3) breach of contract for termination of Porter's employment in violation of his academic freedom (Count III); (4) violations of Title VII, Title IX, the ADEA, and the Kentucky Civil Rights Act ("KCRA") for employment discrimination (Count IV); (5) violations of Title VII, Title IX, the ADEA, and the KCRA for illegal retaliation (Count V); (6) negligent hiring, retaining, and supervising of Sergent (Count IX); and (7) liability in respondeat superior (Count X). Porter also asserts the following claims against Sergent: (1) defamation per se and per quod (Count VI); (2) false light (Count VII); and (3) violations of the KCRA for illegal retaliation (Count VIII).

Presently before the Court are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Sergent and Berea. Sergent's motion to dismiss seeks to dismiss all claims against him, and Berea's motion to dismiss seeks to dismiss Counts IX and X. (DE 5, 6-1, and 7.) The Court finds below that Sergent's motion to dismiss should be denied, and Berea's motion to dismiss should be granted.

## II.    ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, the complaint must assert sufficient facts to provide the defendant with "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation

marks omitted). A complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A complaint should be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *Browning v. Pennerton,* 633 F. Supp. 2d 415, 429 (E.D. Ky. Jun. 22, 2009) (citing *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir. 1978)). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Drain v. Nicholson*, No. 1:07-cv-690, 2008 WL 123881, at *1 (S.D. Ohio Jan. 10, 2008). "However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged." *O'Hair v. Winchester Police Dep't*, No. 5:15-cv-097-DCR, 2015 WL 4507181, at *2 (E.D. Ky. July 23, 2015).

## A. Count VI: Defamation Claim Against Sergent.

Sergent seeks dismissal of Porter's claim for defamation. Sergent asserts that the statements he made in the email exchange with the SGA board members were true or nonactionable opinions and covered by a qualified privilege. (DE 6-1 at 7-20.) Porter's Second Amended Complaint asserts that several statements in the SGA Email are defamatory. The Court finds that, taking as true all factual allegations in the complaint and drawing all inferences in favor of Porter, the Second Amended Complaint does state a claim for defamation.

A claim for defamation requires the showing of four elements: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by that publication. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014), as corrected (Apr. 7,

2015).  Under Kentucky law, truth is an absolute defense to a defamation claim.  *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011).  The defense applies to statements that are true or substantially true.  *Nat'l Coll. of Kentucky, Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 222 (Ky. Ct. App. 2017).  Statements of opinion are also absolutely privileged except where the statement "implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014). "[E]ven if a speaker discloses the facts on which he bases his opinion, the statement may nonetheless be defamatory if the disclosed facts are incomplete, incorrect, or if his assessment of them is erroneous."  *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. Ct. App. 2015).

### 1. At least one of the statements identified by Porter cannot wholly be considered an opinion and has not been shown to be true.

In the present case, Porter identifies several statements, which he asserts rise to the level of defamation.  (DE 1-2 at 205-07.)  Sergent contends that Porter's claim for defamation should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the statements made by Sergent were either true or nonactionable opinions and subject to a qualified privilege—which is addressed below.  (DE 6-1 at 7-20.)  To state a claim for defamation, Porter's Second Amended Complaint has to identify a single false, defamatory statement meeting the elements described above. While some of the statements identified by Porter may be true and others could be considered nonactionable opinion, the Court finds that at least one of the statements made in the SGA Email cannot wholly be considered an opinion and has not been shown to be true.

In the SGA Email, Sergent stated:

In the process of [the Messer] case, Porter … publicly and in writing and in testimony made sexist, disparaging remarks about each of the three female faculty members in Psychology, including disclosing personal medical records of one, which he characterized falsely, rising to the level of slander, libel, and defamation.

(DE 6-2 at 4.)  Porter asserts in his Second Amended Complaint that this statement is false, and at the motion to dismiss stage, the Court must accept as true all factual allegations in the complaint and must draw all inferences in a light most favorable to Porter.

With respect to this statement, Sergent does not directly assert truth or opinion in defense. Instead, Sergent takes issue with Porter's characterization of the statement in the complaint. (DE 6-1 at 10-11.)  The Second Amended Complaint states that the SGA email "falsely accus[ed] Dr. Porter of improperly disclosing to the public the personal medical information of Dr. Williams in an attempt to defame her in order to disparage and discredit her personally and professionally."  Sergent asserts that Porter's characterization of the email is incorrect, and instead, the email states that "during the process of the Messer case, Dr. Porter 'disclo[ed] personal medical records of [a female Psychology faculty member], which he characterized falsely, rising to the level of slander, libel, and defamation.'"  (DE 6-1 at 11.)

While it is true that the email makes no mention of Williams directly and does not state that Porter's disclosure of the medical records was done "in an attempt to defame Williams in order to disparage and discredit her personally and professionally," the email does state that Porter publicly disclosed the personal medical records of a psychology professor and characterized them falsely, rising to the level of slander, libel, and defamation.  Porter Second Amended Complaint asserts that this statement is false. Presumably, Sergent's position is that truth protects his statement.  However, there currently is not enough evidence showing that the statement is true or substantially true. Accordingly, at this point, Porter's claim for defamation should not be dismissed.

### 2. Qualified Privilege.

Sergent further asserts that the statements identified by Porter are subject to a qualified privilege.  (DE 6-1 at 16-19.)  Porter asserts that the privilege does not apply, and even if it did, his complaint asserts facts that are sufficient to establish actual malice. (DE 11 at 15-19.)

Under Kentucky law, an individual's communication is privileged where it is "one in which the party has an interest and it is made to another having a corresponding interest." *Toler*, 458 S.W.3d at 282 (internal quotation marks and citations omitted). When the privilege applies, the burden is on the plaintiff to prove actual malice or abuse of the qualified privilege. Abuse of the qualified privilege may be shown in several ways, including a showing of:

> (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

*Id.* at 284 (internal quotation marks omitted).

Assuming that a qualified privilege applies with respect to Sergent's statements, Porter's Second Amended Complaint asserts actual malice. The complaint alleges that Sergent's email was sent to the SGA board members to retaliate against Porter for his support of Messer—who was the subject of a civil rights grievance filed by three female psychology professors, one of which was Sergent's wife—and for his dissemination of the Survey, which contained several fact scenarios drawn from the issues, arguments, and events presented throughout the Messer proceedings. The Survey was disseminated to the entire campus community. The complaint alleges that Sergent sent the SGA Email knowing of the falsity of the statements therein. Porter also alleges that Sergent had "sinister or corrupt motives, hatred, revenge, personal ill will spite and desire to injure and retaliate" against him for his past actions. In the alternative, Porter pleads that Sergent published the false and defamatory statements due to "gross indifference and recklessness and wanton or willful disregard of Dr. Porter's right to personal security including his uninterrupted entitlement to enjoyment of his good reputation in the community." (DE 1-2 at 206-07.) The complaint also alleges that Sergent threatened an undergraduate with personal academic and career damage if he did not heed Sergent's recommendation to rescind the SGA Service Award. In support of this argument, Porter cites a portion of the email chain where Sergent states to the student:

Clearly you have no interest in my advice or the advice of your other faculty advisor, both of whom know much more than you about a great many things directly related to this situation. So I hope you at least listen to those around you among the SGA leadership who are wiser and better informed. One last bit of advice: I would caution you against burning bridges this early in your education, particularly for the wrong side of a cause.

Do not email me again regarding this issue.

(DE 1-2 at 176.)

While the Court does not agree with Porter's characterization that the email reflects a threat of "academic and career damage," the overall content of the email combined with the other assertions in the complaint are sufficient to allege actual malice. Accordingly, at this time, Porter's claim for defamation should not be dismissed based on Sergent's assertion of a qualified privilege.

**B. Count VII: False Light Claim Against Sergent.**

Sergent also seeks dismissal of Porter's claim for invasion of the right to privacy based on portrayal in false light. Sergent asserts that Porter cannot show his claim for false light because he cannot show that the statements were made in a public manner. Sergent also asserts that the statements were truthful or nonactionable opinion and that the same qualified privilege that applies in the defamation context also applies to Porter's false light claim. (DE 6-1 at 19-20.) Porter contends that the complaint's allegations are sufficient to state a claim for false light. (DE 11 at 19-21.) The Court finds that, taking as true all factual allegations in the complaint and drawing all inferences in favor of Porter, the Second Amended Complaint does state a claim for false light.

As stated above, at least one of the statements identified by Porter cannot wholly be considered an opinion and has not been shown to be true. Thus, dismissal of Porter's false light claim on the basis that the statements were truthful or nonactionable opinion is not appropriate.

Similarly, as stated above, assuming the qualified privilege applies, Porter's complaint alleges actual malice. Thus, Porter's claim for false light should not be dismissed based on Sergent's assertion of a qualified privilege.

To show a claim for false light, the plaintiff must show that "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981). Such claims require that the "publicity … put plaintiffs in a false light *before the public*." *Stewart v. Pantry, Inc.*, 715 F.Supp. 1361, 1369 (W.D. Ky. 1988) (emphasis in original).

Sergent asserts that Porter cannot show that the statements were put forth in a public manner. Sergent argues that since the emails make clear that they were sent to the SGA board members, consisting of six people, there are not sufficient facts to state a claim for invasion of privacy based upon "false light" publicity. (DE 6-1 at 19-20.)

The complaint alleges that Sergent published the statements "to more than one member of the SGA board in order to portray Dr. Porter in a false light and to attribute to him characteristics, conduct or beliefs that are false and which placed him before the public in a false position that is highly offensive to a reasonable person of this Commonwealth." (DE 1-2 at 208.) There is actually no indication on the face of the complaint of how many individuals received the subject email. In Sergent's motion to dismiss, he states that the email was sent to a "six-member" audience including members of the SGA board and a co-advisor, but the initial email appears to have been sent to only four people. Additionally, the email states "I ask that you please share this with everyone else on the executive committee for tonight's meeting." (DE 6-2 at 4.) At this point, it is not entirely clear how many people received the email communications from Sergent.

12

Porter contends in his response to Sergent's motion to dismiss that "there is an exception to the requirement that publicity be communicated to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge [if] the representation was communicated to a smaller group of persons, including the plaintiff's employer, friends, or family, with whom the plaintiff has a special relationship." (DE 11 at 20 (quoting Richard E. Kaye, Cause of Action for False Light Invasion of Privacy, 33 Causes of Action 2d 1, at § 8 (2007 & Supp. 2019).)

The Court need not determine right now whether under Kentucky law, false light claims may be shown if "the representation was communicated to a smaller group of persons, including the plaintiff's employer, friends, or family, with whom the plaintiff has a special relationship" because, based on the allegations in the complaint, the Court finds that Porter has stated a claim for false light. While it may be deduced in discovery that the statement was not made publicly such that Porter's claim for false light is not supported by the evidence, it is too early for the Court to make that determination. The face of the complaint states a claim for false light, and accordingly, it should not be dismissed at this time.

**C. Count VIII: Claim for Illegal Retaliation Under the KCRA Against Sergent.**

Sergent also seeks dismissal of Porter's claim for illegal retaliation under the KCRA. He asserts that Porter's complaint does not show that he has suffered an adverse employment action, as required under the KCRA. Sergent contends that to the extent Porter "intended to allege that the emails led to the SGA's decision not to give him the Student Service Award (an allegation that does not appear in the Complaint), … he still fails to articulate any adverse employment action to support his retaliation claim" because the Student Service Award "does not result in a significant change in the terms and conditions of employment and cannot constitute an adverse action." (DE 6-1 at 21-22.) Porter argues that the "retaliation need only be 'materially adverse' to Dr. Porter. It need not affect the terms and conditions of his

employment at the College." He additionally asserts that Sergent's "malicious defamation of Dr. Porter and the resulting injury to his reputation, alone, constitute actionable retaliation under the KCRA." (DE 11 at 5.)  The Court finds that the complaint states a claim for illegal retaliation, however, the issues cited by the parties may be appropriately decided on summary judgment.

Under the KCRA,

It shall be an unlawful practice for a person, or for two (2) or more persons to conspire:

(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter ....

Ky. Rev. Stat. Ann. § 344.280. Retaliation claims under the KCRA are interpreted consistently with unlawful retaliation claims under federal law.  *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 801 (Ky. 2004), as modified on denial of reh'g (May 20, 2004).  To establish a retaliation claim under the KCRA, a plaintiff must demonstrate: (1) that he engaged in an activity protected by the KCRA; (2) that the exercise of his civil rights was known by the defendant; (3) that thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *Id.* at 803 (internal quotation marks omitted) (quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)).

In the present case, Sergent asserts that Porter has failed to allege an adverse employment action.  Porter contends that his complaint specifically alleges that Sergent retaliated against him in an attempt to discredit him in front of the students and to injure his academic career, resulting in rescission of the Student Service Award.  He argues that Sergent's actions are "materially adverse," and thus, he has stated a valid claim for retaliation under the KCRA.

An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

14

(1998). Such action, "in most cases inflicts direct economic harm." *Id.* at 762. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse[.]" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted).

Although Porter does not specifically mention the rescission of the Student Service Award in Count VIII, he does state that:

> [u]pon hearing of the SGA's vote to give Dr. Porter the award, Dr. Sergent was again very angry and spiteful toward him and wanted to derail the SGA's decision. Dr. Sergent wanted to punish Dr. Porter and to retaliate against him for his past support of Dr. Messer and for his dissemination of the Survey, which Dr. Sergent hastily and incorrectly inferred to be an "attack" on his wife for her prior grievances against Dr. Messer.

(DE 1-2 at 210.) Additionally, elsewhere in the complaint, Porter alleges that the subject emails led to the rescission of the SGA award and were an attempt to discredit Porter in front of his students and injure his academic career at the College. (DE 1-2 at 171-77.)

Determining whether the rescission of the Student Service Award qualifies as a "materially adverse" employment action is not appropriate at this time. Although the Court is doubtful that the loss of the Student Service Award qualifies as an adverse employment action under the KCRA, the Court does not have enough information regarding the nature of the award to make that determination. While there is some authority supporting that the denial or rescission of an award can constitute a "materially adverse" employment action, those cases deal with awards that were directly tied to changes in the employee's payment, benefits, or status. *See Saunders v. Mills*, 172 F.Supp.3d 74, 93 (D.D.C. 2016) (The denial of a performance award was a "materially adverse" action "because it could impact an employee's 'compensation and tangible benefits' and could dissuade a reasonable worker from filing or supporting a complaint of discrimination."); *Bolduc v. Town of Webster*, 629 F.Supp.2d 132, 152-53 (D. Mass. 2009) (Rescission of a commendation was an adverse employment action because the receipt of the award would have weakened a decision-maker's recommendation that the plaintiff be fired.)

Additionally, with respect to Porter's argument that Sergent's "malicious defamation of Dr. Porter and the resulting injury to his reputation, alone, constitute actionable retaliation under the KCRA[,]" the Court questions whether Kentucky law supports that loss of reputation constitutes an adverse employment action under the KCRA.  The Court has been unable to locate binding precedent stating that loss of reputation qualifies as an adverse employment action under Kentucky law.  The Court has, however, located precedent from other jurisdictions where the courts have stated that loss of reputation does not constitute an adverse employment action.  *See*, *e.g.*, *Fisher v. Dep't of Veterans Affairs*, No. 08-10748, 2009 WL 1885072, at *2 (E.D. Mich. June 30, 2009) ("Purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation or prestige do not constitute adverse employment actions."); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("Furthermore, public humiliation or loss of reputation does not constitute an adverse employment action under Title VII."). *But see*, *Zuzul v. McDonald*, 98 F. Supp. 3d 852, 869 (M.D.N.C. 2015) ("Allegations that retaliatory actions caused the loss of professional reputation can constitute adverse employment actions for purposes of employment retaliation claims.")  The Court would welcome further arguments regarding this issue on summary judgment.

The Court finds that Porter has stated a claim for illegal retaliation under the KCRA against Sergent.  "A complaint should be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *See Browning*, 633 F. Supp. 2d at 429 (citing *Rauch,* 576 F.2d at 697).  Here, there is some law to support Porter's claims, Porter has alleged sufficient facts to state a claim for illegal retaliation under the KCRA, and there is no insurmountable bar to relief on the face of the complaint.  Accordingly, dismissal of this claim is not appropriate at this time.

16

**D. Berea's Motion to Dismiss.**

Berea has filed a motion to partially dismiss, which seeks to dismiss Counts IX and X of Porter's Second Amended Complaint. (DE 7.) Count IX lists a claim for negligent hiring, retaining, and supervising of Sergent, and Count X lists a claim for respondeat superior liability. Berea asserts that these claims should be dismissed for four reasons: (1) Porter's claims are untimely; (2) Porter fails to plead any facts connecting Berea to his claims against Sergent; (3) Berea cannot be held vicariously liable under the KCRA because Porter has failed to allege an adverse action that occurred as a result of Sergent's emails; and (4) respondeat superior liability is not an independent cause of action. (DE 7 at 5.)

Porter, in his response, admits that the claims are untimely. However, he asserts that equitable tolling should apply because Berea fraudulently or misleadingly concealed these causes of action against it. Porter additionally asserts that the complaint alleges sufficient facts to state a cause of action against Berea for negligent hiring, retaining and supervising of Sergent, that the complaint alleges sufficient facts to show an adverse employment action resulting from illegal retaliation, and that the complaint sufficiently pleads the issue of Berea's respondeat superior liability. (DE 15.)

The Court finds that Porter's Count IX claim for negligent hiring, retaining, and supervising of Sergent should be dismissed because it is untimely, and Porter has not established that equitable tolling should apply. Additionally, the Court finds that Count X—liability in respondeat superior—should be dismissed because respondeat superior liability is not an independent cause of action. Moreover, as Count X relates to Porter's defamation and false light claims, it is untimely, and Porter has not established that equitable tolling should apply. Accordingly, the Court grants Berea's motion to partially dismiss. Since the Court finds that these claims should be dismissed for the aforementioned reasons, the Court will not consider the other arguments raised by the parties.

17

1.   **Count IX: Negligent Hiring, Retaining, and Supervising of Sergent.**

Berea seeks to dismiss Porters Count IX claim on the basis that it is untimely.  A Court may appropriately dismiss a claim for failure to comply with the statute of limitations if the complaint "shows that the action was not brought within the statutory [limitations period]." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978); *see also Gibson v. American Bankers Ins. Co.*, 91 F.Supp.2d 1037, 1040 (E.D. Ky. 2000) ("[T]he prevailing rule is that a complaint which shows on its face that relief is barred by the affirmative statute of limitations is properly subject to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."). Claims for negligent hiring, retaining, and supervising are "derivative of—and dependent upon—the underlying tort of the supervisors' subordinates" and thus claims for negligent hiring retaining and supervising accrue "at the same time as the common law [] claim[s] upon which [they are] based." *Hoskins v. Knox Cty., Kentucky*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *21 (E.D. Ky. Mar. 15, 2018).

In the present case, Porter's claim for negligent hiring, retaining, and supervising is based on Sergent's alleged defamatory conduct.  The complaint states that this conduct occurred on April 8-9, 2018. (DE 1-2 at 207.)  Under Kentucky law, defamation and false light claims are subject to a one-year statute of limitations.  *See Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 19 (Ky. 2008); *see also* Ky. Rev. Stat. Ann. § 413.140 (applying one-year statute of limitations for actions "for libel or slander"); *Salyer v. Southern Pov. Law Ctr., Inc.*, 701 F. Supp. 2d 912 (W.D. Ky. 2009) (false light claim governed by one-year statute of limitations for defamation). Accordingly, the statute of limitations on Porter's claim for negligent hiring, retaining, and supervising expired on April 9, 2019.

Porter filed his Second Amended Complaint on November 14, 2019, over six months after the expiration of the statute of limitations.  Porter does not disagree that a one-year statute of limitations applies to claims for defamation and false light or that his claims were brought

beyond one-year after the date of the alleged conduct.  Instead, he argues that the limitations period should be equitably tolled because Berea fraudulently and misleadingly concealed these causes of action against it.  Porter asserts that he "sought to sue the College and Dr. Sergent separately in state court to keep the two Defendants from pointing fingers at each other in front of a jury."  However, despite Porter's objections, the cases were consolidated.  Porter contends that he was not aware of the negligent hiring, retaining, and supervising claim against Berea until Sergent asserted a qualified privilege in defense to the claims against him.  Porter argues that he should be able to bring these claims because Berea was deceptive when it denied "knowledge of and support of Dr. Sergent's defamatory statements." (DE 15 at 3-8.)  This denial appears to be based on Berea's Answer to Porter's initial complaint.  In its Answer, Berea—in responding to Porter's specific allegations—stated that "Sergent acted on his own without consulting the administration" and it did not "conspire[] or enable[] Sergent's posts." (DE 1-1 at 126 and 143.)

Equitable tolling is generally only available "'when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (quoting *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014). Five factors are considered in evaluating whether equitable tolling may be appropriate: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing his rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *See id.* The Sixth Circuit further makes clear that "a litigant carries the burden of establishing [his] entitlement to equitable tolling." *Id.* "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,

209 F.3d 552, 561 (6th Cir. 2000) (citing *Johnson v. United States Postal Service*, 863 F.2d 48 (Table), 1988 WL 122962, at *3 (6th Cir. Nov.16, 1988)).

Porter's argument that equitable tolling should apply is unpersuasive. Porter essentially asserts that he is entitled to equitable tolling on the Count IX claim against Berea based on Sergent's assertion of a qualified privilege with respect to the claims asserted against him. Porter's argument that Berea was somehow deceptive in its Answer is entirely unsupported. Moreover, both Berea and Sergent are free to assert whatever defenses may be available to them, regardless of whether those defenses conflict with one another. Porter's claim for negligent hiring, retaining, and supervising was identifiable from the outset—there is no indication that Berea attempted to conceal that Sergent was its employee during the events of this case. Just because Porter did not anticipate that certain defenses would be raised does not justify equitable tolling. Nothing prevented Porter from bringing this claim within the applicable statute of limitations. Accordingly, equitable tolling is not warranted.

It is evident from the face of the complaint that Porter's Count IX claim is barred by the applicable statute of limitations. Accordingly, this claim is dismissed with prejudice.

### 2. Count X: Respondeat Superior Liability.

Berea seeks to dismiss Porter's Count X claim on the basis that it is untimely as it relates to Porter's defamation and false light claims. (DE 7 at 5.) Additionally, Berea asserts that it should be dismissed because respondeat superior liability is not an independent cause of action.

The statute of limitations for respondeat superior liability claims is based on the statute of limitations for the underlying claim on which the claim for respondeat superior liability is based. *See B.L. v. Schuhmann*, 3809 F.Supp.3d 614 (W.D. Ky. 2019). Here, Porter's claim for respondeat superior liability is based on his claims against Sergent for defamation, false light,

20

and illegal retaliation.[1]  As stated above, defamation and false light claims have a one-year statute of limitations.  *See Papa John's*, 244 S.W.3d at 49; *see also* Ky. Rev. Stat. Ann. § 413.140 (applying one-year statute of limitations for actions "for libel or slander"); *Salyer*, 701 F. Supp. 2d at 912 (false light claim governed by one-year statute of limitations for defamation).

Here, the defamatory conduct occurred on April 8-9, 2018, and the statute of limitations expired a year later on April 9, 2019.  Porter did not assert this claim for respondeat superior liability until November 14, 2019.  Again, Porter does not disagree that a one-year statute of limitations applies to claims for defamation and false light or that his claims were not brought within one-year of the alleged conduct.  Instead, he contends that equitable tolling should apply. (DE 15 at 3-8.)

For the same reasons stated above, equitable tolling is not warranted.  Nothing prevented Porter from bringing this claim within the applicable statute of limitations.  It is evident from the face of the complaint that Porter's Count X claim, as it relates to Porter's defamation and false light claims, is barred by the applicable statute of limitations.  Accordingly, this claim will be dismissed with prejudice.

Porter's Count X claim is additionally dismissed because respondeat superior liability is not an independent cause of action.  *See Vonderhaar v. AT&T Mobility Services, LLC*, 2019 WL 1120117 *13 (E.D. Ky. March 11, 2019) ("[T]he doctrine of respondeat superior is not a cause of action.  It is a basis for holding the [Defendant] responsible for the acts of its agents.") Count X is specifically listed in Porter's complaint as a separate cause of action titled "Respondeat Superior Liability."  Listing respondeat superior liability as a separate count in a complaint is inappropriate under the law of this jurisdiction.  Thus, Count X should be dismissed.  *See id.*

---

[1] Illegal retaliation under the KCRA has a five-year statute of limitations.  Although the statute of limitations has not run on this claim, Count X is otherwise dismissed because respondeat superior liability is not an independent cause of action.

### III.    CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) Sergent's motion to dismiss (DE 5) is **DENIED**.

(2) Berea College's motion to partially dismiss (DE 7) is **GRANTED**.

(3) Counts IX and X are **DISMISSED**.

(4) Pursuant to Docket Entry 9, Berea shall file its answer to Porter's Second Amended

    Complaint within ten (10) days of the entry of this order.

Dated August 4, 2020.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY